IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 01-CR-30042-DWD |
| | ) | |
| MONTE J. CASTELLANO, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM & ORDER

**DUGAN, District Judge:**

Monte J. Castellano pleaded guilty to wire fraud in 2002, and his sentence included an order to pay restitution in the amount of $1,847,964.25. The Government recently commenced garnishment proceedings against Castellano's employer (Doc. 68) and Wells Fargo Bank (Doc. 58), where Castellano maintains several checking accounts. Castellano claims various exemptions from seizure as to the Wells Fargo checking accounts and requests a hearing regarding the same (Doc. 61). He has also filed a motion to transfer the collection proceedings to the Southern District of Florida (Doc. 60), where he now resides, and a motion for an accounting of the restitution proceeds (Doc. 62). The Government has filed responses in opposition (Docs. 65, 75, and 76), and Castellano has filed a memorandum in support of his motion to transfer (Doc. 77) and a reply in support of his motion for accounting (Doc. 79).

## I.   BACKGROUND

Monte J. Castellano pleaded guilty to wire fraud and was sentenced to 18 months' incarceration on October 29, 2002. His sentence included an order to pay restitution,

under the Mandatory Victims Restitution Act ("MVRA"), *see* 18 U.S.C. § 3663A, in the

amount of $1,847,964.25, jointly and severally with his co-defendant (and father), Joseph

Castellano, and their company (Docs. 38, 39, 41).[1]

In February 2022, the Government applied for and obtained a writ of garnishment

against Momentum Consulting Corporation, Castellano's employer, and against Wells

Fargo Bank in connection with the following accounts:

| Description of Property | Approximate Value | Description of Debtor's Interest in Property |
|---|---|---|
| 1.  Checking Account | $3801.55 | Joint Owner |
| 2.  Checking Account | $0.00 | Joint Owner |
| 3.  Checking Account | $33.07 | Sole Owner |
| 4.  Checking Account | $2059.89 | Sole Owner |

Castellano filed a Notice of Exceptions as to the writ of garnishment directed

against Wells Fargo Bank (Doc. 61), claiming exemptions for (1) wearing apparel and

school books; (2) fuel, provisions, furniture, and personal effects; (3) books and tools of a

trade, business or profession; and (4) minimum exemptions for wages, salary and other

income. Castellano also filed a motion to transfer the collection proceedings to the

Southern District of Florida, where he now resides, and a motion for an accounting of

restitution proceeds. Each of these matters will be addressed in turn below.

---

[1] *See also* related Case No. 01-30073-DRH as to Joseph Castellano and the Castellano's company.

## II.    DISCUSSION

### A.    Motion to Transfer

The MVRA provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means. That includes the authority to collect restitution on behalf of private victims and in accordance with the practices and procedures for the enforcement of a civil judgment. The federal law that provides the practices and procedures for the enforcement of a civil judgment is the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001 et seq.

The FDCPA allows the Government to apply for a writ of garnishment against a debtor's property or non-exempt disposable earnings. 28 U.S.C. § 3205(a). A garnishee, such as an employer or bank, must file an answer to the writ of garnishment about any such property that it holds, and it must serve a copy of the answer on the debtor. Section 3205(c)(4). The clerk of court must issue to the debtor a notice that explains potential exemptions, as well as the process for claiming an exemption or requesting a transfer of venue to the district where the debtor resides. Section 3202(b). The FDCPA further provides that, if the debtor files a timely request, "the action or proceeding in which the writ, order, or judgment was issued *shall be transferred* to the district court for the district in which the debtor resides." Section 3004(b)(2) (emphasis added).

In the instant case, Castellano filed a timely request to transfer. As such, Castellano contends the "shall be transferred" language in Section 3004(b)(2) mandates that this action be transferred to the Southern District of Florida. At first blush, it appears that, once a timely request is made, transfer under § 3004 is mandatory. Courts, however, are

split on whether the right to transfer is absolute.  *Compare United States v. Nash*, 175 F.3d 440, 442 (6th Cir. 1999) ("Because the plain language of [FDCPA] is mandatory, the district court must grant a transfer as long as it is made in a timely manner.") with *United States v. Furkin,* 165 F.3d 33 (7th Cir. 1998) (unpublished) (district court properly denied timely request to transfer pursuant to § 3004(b)(2) because a sentencing court retains jurisdiction to enforce the payment of the criminal monetary penalties it imposes). *See also United States v. Resnick,* 2013 WL 12355933 (N.D. Ill Dec. 6, 2013) (Section 3004(b)'s transfer provision is not absolute).

In support of his position, Castellano cites to *United States v. Peters*, 783 F.3d 1361 (11th Cir. 2015). In *Peters*, after the Government sought to seize property, the defendant requested a hearing and a transfer of the proceedings from the Florida court of conviction to California where he was incarcerated. The district judge rejected the defendant's claim of an exemption and denied the transfer. The Eleventh Circuit vacated the decision and remanded for entry of an order transferring the writ of execution proceeding to the California district court. In reaching this decision, the appellate court held that the use of the word shall in § 3004(b)(2) "creates an obligation not subject to judicial discretion."

Unlike the instant case, however, *Peters* involved a conviction for tax fraud; it did not involve restitution under the MVRA. The bulk of district courts that have considered the FDCPA's transfer provision in collection cases arising from a restitution order issued under the MVRA have found that the transfer provision is not absolute. *See,* e.g., *United States v. Tedder*, 2004 WL 415270 (W.D. Wis. Feb. 26, 2004) (finding that granting transfer would pose a real risk of curtailing or limiting the government's right to collect the fine

and forfeiture imposed on the defendant); *United States v. Poulsen*, 2010 WL 1849294, at *4 (S.D. Ohio May 3, 2010) (denying a motion to transfer because transfer would interfere with the court's obligation under the MVRA to ensure that the defendant complied with the judgment for restitution); *United States v. Jeburk,* 2008 WL 4499982, at *1 (S.D. Ga. Oct. 6, 2008) (denying transfer under § 3004(b)(2) on ground that provisions of the MVRA take precedence over provisions of the FDCPA).

The Court further notes that another line of district court cases, although relying on a different rationale, has also concluded that the transfer provision in Section 3004(b)(2) is not mandatory. *See* e.g., *United States v. Matthews*, 793 F. Supp. 2d 72, 76 (D. D.C. 2011); *United States v. Gipson*, 714 F. Supp. 2d 571 (E.D. Va. 2010). These courts have concluded that a timely request to transfer under the FDCPA may be denied upon a showing of good cause. In *Gipson*, for example, the court noted that the FDCPA, despite its use of the "shall be transferred" language in § 3004(b)(2), also gives district courts "plenary authority to 'make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure' under the statute." 714 F. Supp. 2d at 573 (quoting 28 U.S.C. § 3013). Relying on this grant of plenary authority, the court concluded that § 3004(b)(2) "merely operates to shift the burden" from the party requesting transfer to the party opposing transfer, and that a district court may deny transfer for "good cause" shown. Id. at 576.

Having reviewed the relevant authority, the Court is persuaded that Castellano's right to transfer these collection proceedings is not absolute, a finding that is consistent with the Seventh Circuit's decision in *United States v. Furkin,* 165 F.3d 33 (7th Cir. 1998)

(unpublished). Further, the Court finds that, even applying the more stringent "good cause" standard discussed in *Gibson*, transfer would be inappropriate. In the instant case, as noted by the Government, transferring these proceedings would impose a hardship on the victims and potential witnesses who remain in the Southern District of Illinois. Additionally, the staff in the U.S. Attorney's office for the Southern District of Illinois has performed a detailed financial investigation into Castellano, and that knowledge is not easily transferred to a different district. Finally, there is a strong relationship between the forum community and the subject litigation; the underlying criminal offense, which involved defrauding new homeowners, occurred in the Southern District of Illinois and the Government chose to prosecute the action here. Considering these factors, the Court **DENIES** Castellano's motion to transfer. *See* 28 U.S.C. § 1404 (in assessing transfer, the Court should evaluate the convenience of the parties and witnesses, and whether transfer is in the interests of justice).

## B.     Motion for a Hearing

Castellano claims the writ of garnishment as to the checking accounts with Wells Fargo Bank is subject to four exceptions and requests a hearing regarding the same. The Government has filed a response noting that the exemptions claimed are not applicable because the Government is not attempting to levy on any personal property described in the claimed exemptions.

The Court agrees with the Government. The Writ does not seek to garnish any personal property currently in Castellano's possession. Castellano's claimed exemptions for (1) wearing apparel and school books; (2) fuel, provisions, furniture, and personal

effects; and (3) books and tools of a trade, business or profession, do not apply since the Government does not assert any claim on any of those items. Castellano's fourth claimed exemption (minimum exemptions for wages, salary and other income) is also without merit. As noted on the exemption form (Doc. 61, p. 4), this exemption is not included in 18 U.S.C. § 3613(a)(1)'s list of available exemptions for criminal restitution debts. Instead, the Consumer Credit Protection Act (CCPA) steps in automatically to protect a restitution debtor's paychecks. *See* 18 U.S.C. § 3613(a)(3). However, as argued by the Government, the CCPA only protects periodic payments of compensation. *See Kokoszka v. Belford*, 417 U.S. 642, 651 (1974). Once wages are deposited into a bank account, they lose their character as wages and become assets. *See United States v. Lee*, 659 F.3d 619, 621 (7th Cir. 2011) (noting "a distinction between wages and assets that originated as wages") and *Usery v. First Nat. Bank of Arizona*, 586 F.2d 107, 110 (9th Cir. 1978) (finding that "a bank account has neither an element of periodicity nor the critical relationship to a person's subsistence that a paycheck does.").

Considering the above, the Court finds that a hearing is not necessary. Castellano does not raise any claim of statutory noncompliance, and the only issue for a hearing would be the "probable validity of any claim of exemption." 28 U.S.C. § 3202(d). Because the Government is not attempting to levy on property included in any of the exemptions claimed by Castellano, there is no need for a hearing to determine the validity of any of the stated exemptions. See 28 U.S.C. § 3202(d); *United States v. Bank of America*, 2011 WL 1483716 (E.D. Tex. Mar. 28, 2011) (accepting the Government's contentions "that no hearing is necessary because none of the exemptions apply" in a case where "the United

States seeks only to garnish Judgment—Defendant's interest in bank accounts and retirement accounts held by Garnishee—Defendants and nothing more"). Castellano's request for a hearing, and his claim for exemptions, are therefore **DENIED**.

## C.   Request for an Accounting

### 1.   The Parties' Arguments

Castellano requests an accounting of the restitution owed and the amount due (Doc. 62).[2] In support of his request, Castellano alleges as follows:

1. An approximate sum of $260,000 was seized by the Government and never applied to the outstanding restitution balance. Castellano claims that the sentencing judge ordered that these funds be turned over to the bankruptcy court to satisfy the restitution victims.

2. The victims have had their homes finished and/or were reimbursed by insurance.

3. At a revocation hearing for his co-defendant, Joseph Castellano, the sentencing judge made the following statement when responding to counsel's argument that the restitution amount should be reduced because several claimants received proceeds from the bankruptcy estate:

> You're right. At some point in time somebody should go through that process, and I do not necessarily disagree with you. I'm sure nobody's actually sat down to go through the process. And that number I gave is subject to review, subject to change depending upon the exact process you're talking about, and I acknowledge that.

(Case No. 01-30073 Doc. 208, p. 22).

In responding to Castellano's motion (Doc. 76), the Government states that the MVRA and the FDCPA do not expressly address whether Castellano is entitled to an accounting. The Government also notes that, to the extent that Castellano is claiming that

---

[2] Castellano's sentence included an order to pay restitution in the amount of $1,847,964.25, and the Clerk's Notice of Garnishment (Doc. 57) indicates that a balance of $1,742,907.35 remains due for restitution.

he should not owe restitution for losses covered by insurance companies, that position is foreclosed by 18 U.S.C. § 3664(j)(1) which requires that restitution be paid to insurers and other providers of compensation after individual victims are compensated. Relying on these arguments, the Government asks the Court to deny Castellano's motion for an accounting. The Government, however, states that it is willing to provide Castellano with a printout of his restitution payments to date (the Government also suggests that Castellano could request a copy of his payment history from the Clerk of Court's finance office).

In replying to the Government's response (Doc. 79), Castellano argues that he is not merely requesting his payment history (an amount that is easily determined). Rather, Castellano is asking the Government to provide an accounting of "the true amount of restitution owed." According to Castellano, various amounts should be credited for restitution, including but not limited to the funds seized by the FBI, the funds transferred from the criminal case to the Bankruptcy Court, and victims whose claims were fully satisfied. Thus, Castellano claims, by offering to provide Castellano with nothing more than his payment history, the Government "skirts the main issue raised by [his] motion."

## 2. Analysis

The Government's argument regarding losses covered by insurance proceeds is well taken. The Court, however, agrees that the Government's remaining arguments fail to address the main issue raised by Castellano's motion – the true amount of restitution owed. It is not unreasonable for Castellano know the extent of his remaining restitution obligation. *See United States v. Yalincak*, 853 F.3d 629, 639 (2d Cir. 2017) ("persons subject

to restitution orders are entitled to know, as they led their lives and make economic decisions over the long duration of restitution orders, the extent of their remaining restitution obligations."). Further, Castellano's allegations and the history of the case raise the *possibility* that Castellano is entitled to an offset. Castellano is jointly and severally liable to repay the victims, and it has been approximately 20 years since restitution orders have been imposed upon him, his father, and their business. If the victims have received restitution from any of Castellano's co-defendants, an offset may be appropriate. *See United States v. Dawson*, 250 F.3d 1048, 1051 (7th Cir. 2001) (if defendant's victim receives restitution from any co-defendants, the Government must notify the defendant so he can file a request for modification of restitution under 18 U.S.C. § 3664(j)(2)). Further, to the extent that property or cash seized by the Government and/or bankruptcy proceeds have been disbursed to Castellano's victims, an offset might be warranted.[3]

Finally, the Court is not convinced that it lacks the power to order the requested accounting. While the relevant statutory authority regarding the procedures for issuing

---

[3] It is well-settled that forfeiture and restitution serve different purposes, namely, "forfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains [ ] to the United States Department of Justice," whereas, "restitution seeks to make the victim whole." *United States v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009) (citation omitted) (collecting cases). Thus, Castellano is not entitled to an offset for any property or cash seized by the Government that was *not* turned over to the victims. *See United States v. Emerson*, 128 F.3d 557 (7th Cir. 1997) (holding that the district court has the statutory authority to impose both restitution and forfeiture, and there is no legal authority to offset one from the other). However, several courts have suggested that offset may be appropriate where forfeited funds are disbursed to victims. *See*, e.g., *United States v. Doe*, 374 F.3d 851 (9th Cir. 2004) (leaving open the possibility that disbursements to victims from forfeited funds could offset a restitution order, but rejecting offset claim in that case because the defendant did not allege that any forfeiture proceeds were distributed to victims) *See also United States v. Fore*, 169 F.3d 104, 110 (2d Cir. 1999); *United States v. Smith*, 297 F.Supp.2d 69, 72–73 (D.D.C. 2003).

and enforcing restitution orders does not directly address a court's authority to order an accounting,  as a corollary to its authority to, *inter alia*, adjust the payment schedule for a restitution order "as the interests of justice require," § 3664(k), the Court finds that it is not improper to grant Castellano's accounting request. *See United States v. Carter*, 742 F.3d 445 (9th Cir. 2014) (*per curiam*) (district court retains jurisdiction to determine amounts paid and amounts owing on restitution award).

Accordingly, Castellano's motion for an accounting is **GRANTED**.

### III.   CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that:

1. Castellano's Motion to Transfer (Doc. 60) is **DENIED.**

2. Castellano's request for a hearing and his claim for exemptions (Doc. 61) are **DENIED**.

3. Castellano's Motion for an Accounting is **GRANTED.** Within 60 days of the date of this Order, the Government shall file an accounting of all payments made to the victims such that Castellano can determine his outstanding obligation on the restitution order.

**SO ORDERED.**

Dated: May 16, 2022

_____
DAVID W. DUGAN
United States District Judge